UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HASSAN SALEHI,<br><br>    Plaintiff,<br><br>v.<br><br>LAKEVIEW TERRACE HOMEOWNERS ASSOCIATION,<br><br>    Defendant. | Case No. 22-cv-02662-JSW<br><br>**ORDER DENYING MOTION TO DISMISS, GRANTING, IN PART, MOTION FOR PRELIMINARY INJUNCTION, REFERRING PARTIES TO MAGISTRATE JUDGE FOR SETTLEMENT CONFERENCE, AND SETTING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. Nos. 11, 16 |

Now before the Court for consideration are the motion to dismiss filed by Defendant Lakeview Terrace Homeowners Association (the "Association") and the motion for a preliminary injunction filed by Plaintiff Hassan Salehi ("Salehi"). The Court has considered the parties' papers, relevant legal authority, the record in this case, and it has had the benefit of oral argument.[1]  For the reasons that follow, the Court DENIES the Association's motion and GRANTS, IN PART, Salehi's motion.

## BACKGROUND[2]

**A.    Procedural History.**

On May 3, 2022, Salehi filed his original complaint in this case asserting the Association violated the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. sections 3601, *et seq.*,

---

[1]    The Association objected to the declarations and exhibits that Salehi submitted with the reply in support of his motion for a preliminary injunction. The Court has not relied on those exhibits to resolve the motion for a preliminary injunction, and it OVERRULES the objections as moot.

[2]    The Court has considered facts outside of the complaint that are not subject to judicial notice solely for the purposes of the motion for a preliminary injunction.

1

1  and California's Unruh Act, Civil Code sections 51, *et seq.* (the "Unruh Act").

2  On May 9, 2022, Salehi filed the First Amended Complaint ("FAC"), which is the operative pleading, and filed a motion for a preliminary injunction. On May 26, 2022, the Association moved to dismiss for failure to state a claim. On June 23, 2022, the Association filed a substitution of counsel. In light of that development and because the record suggested Salehi responded to one of the Association's requests, the Court ordered the parties to meet and confer in person and continued the hearing. The parties did not resolve the matter.

**B.   Factual Background.**

Salehi owns a condominium located at 1209 La Terrace Circle in San Jose, California (the "Condo") The Association is a non-profit mutual benefit corporation created for the purpose of managing a common interest development (the "Development"), which includes Salehi's Condo. Its members include all owners of condominium units in the Development. (FAC ¶¶ 2, 6; Dkt. No. 16-2, Association Request for Judicial Notice, Ex. A, First Amended and Restated Declaration of Covenants, Conditions, and Restrictions ("CC&Rs") at 1, Art. III, 3.1.)

The Association is "responsible for maintenance, repair, replacement, painting, and upkeep of Common Area (excluding Exclusive Use Common Area)." (*Id.*, Art. III, § 3.3, Art. IX, § 9.1; *see also* Art. III, § 3.4 (Board "is solely responsible for any construction, reconstruction, refinishing or alteration of improvements situated in the Common Area," excluding Exclusive Use Common Area).) "The Association shall paint, repair, and provide general cleaning and maintenance of Parking Areas." The term "Parking Areas" is defined as "one assigned space, either carport or garage" and the Common Area parking spaces. (*Id.*, Art. I at 5, Art. III, § 3.5.) If a member of the Association wishes to make modifications to the Common Areas, the CC&Rs set forth specific procedures to be followed, which include submitting an application to the Board describing the proposed alterations. (*Id.*, Art. IX, § 9.1; *see also* CC&Rs at ECF pp. 63-64, Amendment to Architectural Approval Process.")

Each owner of a condominium in the Development owns one reserved parking space. (CC&Rs, Art. I at 5.) There are approximately 300 other spaces that are available on a first come first served basis but there are no handicapped parking spaces in the Development. (FAC ¶ 7.)

2

The parking spaces assigned to condominium owners are considered "Exclusive Use Common Area" under the CC&Rs. The other parking and driveway areas are considered "Common Area," which cannot be "altered" without "written consent of the [Association's] Board." (CC&Rs, Art. I at 3-4, Art. II, §§ 2.2.c, 2.2.d., Art. V, § 5.7.)

Salehi's parking space is located behind the building in which his Condo is located. According to the record, there is a grassy strip between the parking space and the building. (*Id.* ¶ 11; *see also* Dkt. No. 19, Errata to Declaration of Maria Kao ("Kao Decl."), Ex. C, Excerpt of Condominium Plan; *see also* Dkt. No. 30-1, Declaration of Counsel Regarding Court Ordered Meet and Confer, ¶ 16 & Dkt. No. 30-4, Ex. C.)[3] In June 2021, Salehi had knee surgery. He alleges currently walks with a cane, has limited mobility, and has been issued a handicap parking placard by the California Department of Motor Vehicles. According to Salehi, because he has trouble walking on uneven surfaces, he cannot use his assigned parking space safely. (FAC ¶¶ 8-9; *see also* Appendix to FAC ("Appx.") at 27-29.) However, there are four unreserved spaces located on the front side of the building in which Salehi's Condo is located, which would not require him to cross a grassy strip. Salehi alleges that these spaces are usually full, so he can rarely park there. (*Id.* ¶¶ 10-11.)

Salehi contacted the Association and asked if he could be assigned one of the spaces in front of his apartment as an accommodation. (*Id.* ¶ 12.) On February 4, 2022, the Association's property manager, Christopher Rivas ("Rivas"), sent Salehi an email and stated that "[i]n order to proceed on to the next steps, you would have to gather info from the contractors that will be doing the work, as well as filling out an architectural application to the Board for approval." (*Id.*, ¶ 13 & Appx. at 6.) Rivas also advised Salehi that "the homeowner is responsible for all the groundwork and cost associated with this request. Once you have all the paperwork and contractors in place for the modification to the space you can pass everything along to management so that legal can draft up a license agreement to memorialize the accommodation." (Appx. at 6.)

On March 14, 2022, Salehi's counsel sent a letter to Rivas. (FAC ¶ 13 & Appx. 2-5.)

---

[3]  The Court has appended a copy of Exhibit C to this Order and highlighted Salehi's assigned parking space (A) and the parking space he is requesting be reassigned to him (B).

3

Counsel noted that the Association did not explain what information Salehi needed to provide and asserted the conditions put forth in Rivas' letter violated the FHAA, including the requirement that Salehi pay for the accommodation. Salehi also stated that if he did not hear from the Association within 30 days, he would file a complaint asserting housing discrimination. (Appx. at 3-5.) On March 28, 2022, the Association's counsel sent Salehi's counsel a letter, stating the Association had agreed to grant a parking accommodation but took issue with Salehi's assertion that he should not be required to incur any costs or provide the Association with information. (FAC ¶ 15 & Appx. at 7-8.)

Salehi alleges that the Association has failed to reasonably accommodate his disability. On May 9, 2022, Salehi filed a motion for a preliminary injunction asking that the Court order the Association to accommodate his disability by designating one of the four spaces in front of his unit for his exclusive use and to do what is necessary to have that space marked as reserved without requiring him to bear the costs. On May 26, 2022, the Association moved to dismiss for failure to state a claim arguing that it has not denied Salehi's request.

The Association has stated that it needs more information from Salehi on an architectural application, which should include the distances involved[4], the exact parking space he wants to use, and how he wants to modify the space, so that this information can be placed before the members for a vote. During the course of this litigation, Salehi did identify the particular parking space he would like to use in lieu of his assigned space, although he has not resubmitted the architectural application to include that information. He also stated he has no preferences on how the space should be modified and believes the Association is better suited to make that determination. He did state that painting "Reserved for Unit 1209" would be an acceptable modification. Neither party suggests that any construction would be required if the space Salehi has identified is assigned to him.

The Court will address additional facts as necessary in the analysis below.

---

[4] Following oral argument, it is not clear whether the Association requires this information to determine which of the parking spaces is "closest" to Salehi's unit or whether they are referring to other distances. If the former, that issue appears moot because Salehi has identified the parking space he wants to use in photographs.

# ANALYSIS

**A.  The Court Denies the Motion to Dismiss.**

    **1.  Applicable Legal Standard.**

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  The Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  Even under the liberal pleading standard of Rule 8(a)(2), a plaintiff must provide more than mere labels, conclusions, and formulaic recitations of their claims' requisite elements.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile.  *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

    **2.  Analysis.**

The FHAA prohibits discrimination "against any person in the terms, conditions, or privileges of sale … of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap[.]"  42 U.S.C. § 3604(f)(2).  "Discrimination" includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B).

> To prevail on a claim under 42 U.S.C. § 3604(f)(3), a plaintiff must prove all of the following elements: (1) that the plaintiff … is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation of the handicap may be necessary

>to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation.

*Dubois v. Ass'n of Apt. Owners of 2987 Kalakaua,* 453 F.3d 1175, 1179 (9th Cir. 2006).

Salehi alleges that because of his knee surgery he has limited mobility and received a handicapped parking placard from the State. Salehi also alleges that through his initial communications with Rivas, the Association was aware of his disability. These facts are sufficient to satisfy the first two elements of his claim. *See* 42 U.S.C. § 3602(h)(1) (defining handicap to mean "a physical or mental impairment which substantially limits one or more of such person's major life activities"; *Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Housing & Urban Dev.*, 620 F.3d 62, 67 (1st Cir. 2010) (relying on fact that complainants had been issued handicapped placard lent support to anecdotal evidence of disabilities).

The third and fourth elements require Salehi to plead facts to show the accommodation is reasonable and necessary on its face. "To prove that an accommodation is necessary, plaintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1155 (9th Cir. 2003). Salehi alleges he asked the Association to accommodate his disability by permitting him to relocate his assigned parking place, and he alleges the Association initially showed a willingness to relocate his parking spot. For purposes of the motion to dismiss, Salehi's *allegations* are sufficient to show the requested accommodation was reasonable and necessary given his mobility issues. *See, e.g., United States v. Cal. Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1381 (9th Cir. 1997) (provision of handicapped parking space may be reasonable accommodation but finding on facts case that plaintiff failed to establish causal nexus between defendant's conduct and alleged injury); *Strum v. Davlyn Inv., Inc.,* No. CV 12-07305 DMG (AGRx), 2013 WL 8604662, at *7 (C.D. Cal. Sept. 30, 2013) (noting handicapped parking spaces are examples of reasonable accommodations under federal regulations); *So. Cal. Housing Rights Ctr. v. Los Feliz Towers Homeowners Ass'n*, 426 F. Supp. 2d 1061, 1067 (C.D. Cal. 2005) (noting provision of handicapped parking space could be considered reasonable accommodation but denying motion

6

for summary judgment based on disputed facts).

The Association argues Salehi's claim falters on the final element because it never denied his request for an accommodation. Instead, it argues Salehi filed suit before the parties were able to complete the interactive process. Salehi relies, in part, on *Astralis*, in which the court rejected a similar argument. 620 F.3d at 67-68. There, the plaintiffs requested that they be permitted exclusive use of handicapped spaces near their apartment, which normally were available on a first come first serve basis for limited periods of time. The record in *Astralis* was more developed and the procedural posture distinguishes it from this case. In addition, the association in *Astralis* had cited the complainants for using the handicapped parking places near their units in excess of a time limitation imposed by the association. *Id.* at 67. The court also noted that putting the question to the entire board was "predestined to fail." Therefore, the court concluded the record was sufficient to find the association had denied the accommodation. 620 F.3d at 68.

Here, it is not clear that a vote by the membership will ultimately fail, because the Association's initially indicated a willingness to consider the accommodation. However, Salehi has been attempting to obtain this accommodation since February 2022 but, to date, the Association has not granted the request. *Cf. Howard v. HMK Holdings, LLC,* 988 F.3d 1185, 1193 (9th Cir. 2021) ("the FHAA does not refer to an interactive process or base liability on a landlord's failure to interact"); *Salisbury v. Caritas Acquisitions V, LLC,* No. CV 18-08247-CJC (Ex), 2018 WL 10483437, at *3 (S.D. Cal. Nov. 20, 2018) ("An undue or unreasonable delay in responding to a request for accommodation may amount to a constructive refusal of the request."). The Court concludes the facts alleged are sufficient at this stage to show the Association denied the request, and it DENIES the motion to dismiss the FHAA claim.

With respect to the Unruh Act claim, the Association's only other argument is that Salehi failed to allege it was a business establishment. However, a condominium association is a business establishment for purposes of the Unruh Act. *See O'Connor v. Village Green Owners Ass'n*, 33 Cal. 3d 790, 796 (1983). Accordingly, the Court also DENIES the motion to dismiss the Unruh Act claim.

//

**B.     The Court Grants, in Part, the Motion for a Preliminary Injunction.**

   **1.     Applicable Legal Standards.**

Preliminary injunctive relief is an "extraordinary and drastic remedy" that is never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 689-690 (2008) (internal citations omitted). In order to obtain such relief, a plaintiff must establish: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In *Alliance for the Wild Rockies v. Cottrell*, the Ninth Circuit held that the "serious questions" sliding scale approach survives *Winter*. 632 F.3d 1127, 1134-35 (9th Cir. 2011). Thus, a court may grant a request for a preliminary injunction if a plaintiff demonstrates that there are serious questions going to the merits and a hardship balance that tips sharply in their favor, "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

"For the purposes of injunctive relief, 'serious questions' refers to questions which cannot be resolved one way or the other at the hearing on the injunction and as to which the court perceives a need to preserve the status quo lest one side prevent resolution of the questions or execution of any judgment by altering the status quo." *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988). Serious questions are "substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1952). Serious questions need not promise a certainty of success, nor even present a probability of success, but must involve a "fair chance of success on the merits." *Nat'l Wildlife Fed'n v. Coston*, 773 F.2d 1513, 1517 (9th Cir. 1985).

   **2.     Analysis.**

For the reasons set forth in above in Section A.2, the Court concludes that Salehi has met his burden to show a likelihood of success on the merits or, in the alternative, serious questions going to the merits. Salehi attests that he has limited mobility and that walking long distances,

especially on uneven surfaces is difficult and exacerbates the likelihood that he would fall and injure himself.  (Dkt. No. 11-1, Declaration of Hassan Salehi, ¶¶ 6-7.)  The Court concludes Salehi has met his burden to show a likelihood of irreparable injury.  *See, e.g., Vasquez v. TriHart, LLC*, No. CV 10-05951-PA (PLAx), 2010 WL 10078513, at *6 (C.D. Cal. Dec. 27, 2010).

Salehi has been attempting to obtain the accommodation since at least February of this year, and the Court concludes that he would be prejudiced by additional delay while this lawsuit progresses.  Further, he has stated he is willing to relinquish his parking space, so the Association and its members will not suffer the loss of any parking spaces during that time.  Moreover, the Court will not require any permanent modifications to the space Salehi has requested.  Accordingly, the Court concludes the equities tip sharply in Salehi's favor, and an injunction would serve the public interest in preventing discrimination, the policy that underlies the FHAA.  *See, e.g., U.S. v. Cal. Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1416 (9th Cir. 1994).

A court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  That rule provides a court "with discretion as to the amount of security required, if any."  *Barahona–Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999).  If there is no evidence that a defendant would be damaged by an injunction, a court may set the amount at zero.  *See, e.g., Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003).  Because the Court is not requiring the Association to make any physical changes to the parking space, it will not require Salehi to post a bond.

Accordingly, the Court GRANTS Salehi's motion for a preliminary injunction on the terms set forth below.

**CONCLUSION**

For the foregoing reasons, the Court DENIES the Association's motion to dismiss and it GRANTS, IN PART, Salehi's motion for a preliminary injunction.  Pending further Order of this Court, pursuant to Federal Rule of Civil Procedure 65, the Association and its officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or

participation with it shall make the parking space marked with a "B" in the Appendix to this Order shall be made available for Salehi's exclusive use. The spot currently assigned to Salehi shall be designated as an unreserved space available on a first-come first serve basis.

It is FURTHER ORDERED that the Court REFERS the parties to a randomly assigned Magistrate Judge for purposes of participating in an early settlement conference that shall take place, if possible, by no later than October 31, 2022.

It is FURTHER ORDERED that the Association shall answer the FAC by no later than August 12, 2022, and the parties shall appear for an initial case management conference on September 9, 2022. The parties shall file a joint case management conference statement by September 2, 2022.

**IT IS SO ORDERED**.

Dated: July 29, 2022

_____
JEFFREY S. WHITE
United States District Judge

Cc: Magistrate Referral Clerk